Ku v. Attorney General Good morning, Your Honor. This is Thomas Griffin for the Petitioner, Chiao Ku v. Atty General and I've asked the clerk for five minutes of rebuttal time. Five minutes. Okay, you got it. Okay, thank you. I think what this case is about is two things, which is trying to get this court to put some limits on the circumstance-specific approach in the removal context, especially in light of the categorical approach, which is sort of the overarching approach that the immigration courts have to take when confronted with criminal convictions that come out of other courts, sometimes years before where the trial's been had and the evidence has been presented. We get to look at the underlying facts, though, right? You get to look at the underlying facts if you need to. So I think the categorical approach, which is, you know, I really think the Zhawan, which started here before it got to the Supreme Court, was a categorical approach case. And you see the Supreme Court struggling with, we have to do the categorical approach. This is how we work with protecting, you know, the rights of immigrants throughout the country that come to us through different laws and different convictions and pleas and guilty findings. You're not asking us to overrule the Supreme Court, are you? I'm saying that it's a categorical, that the Supreme Court and even this court, if the statute had a number in it, if it had a threshold number, it would have gone categorical. It doesn't, so it's beyond it. Reluctantly, they, you know, looked through the, as you know, they looked through the statutes of all the states and said there's nothing, so we're going to have a circumstance-specific approach. But at the same time, the categorical approach is there the whole time. And it says once you find your number, stop. It's not a fishing expedition. And I can tell you by being in front of the immigration courts all the time, the Board of Immigration Appeals loves to find out conduct. And they just light up with fraud offenses because they have a new approach. And they say, tell us what you really did. And it's just wrong.  There's a number, $950,000 is one of those numbers. And we're dealing with a case where because it's the circumstance-specific approach and not the categorical approach, Nijuan tells us, you ask whether that conduct is tied to, right, whether the number they're giving you, the loss number, is tied to the offense conduct or tethered to. So what do we make of that language, tied to or tethered to, Mr. Griffin? Well, it doesn't include, I don't think it includes relevant conduct. It doesn't include dismissed conduct. And especially in this case, which has a very specific date that it happened. There's no dismissed conduct here. We've got an alleged scheme. We've got a course of conduct which is described as resulting in nearly $1 million in loss. We've got a judgment from the district court that cites the number. And we've got a restitution order that cites that number. Given all that, what's your argument for why that number is not tethered to or tied to the conviction? The conviction was a specific event at a specific moment in time. And the language from the statute, which we go back to the categorical, you use the language of the statute. The language of the statute does not come into play in this information until the very last page that starts with the word count one. And then count one, and then it has her name. Defendant hearing having devised, and artifice to defraud money and property by means of materially false and fraudulent pretenses. Basically made a transfer of $2,000. Count one also expressly incorporates everything that was said before, including that paragraph eight, which has the bad number for your client. It does not include it in terms of the statutory language of using a writing, a sign, a signal, or pictures to transfer things and wire communications. That introductory language, Your Honor, which spans five years of time, not one moment at an ATM machine, which is the conviction basically, does not include events that involve. That's true, but you're begging the question of tied to or tethered to. It doesn't say, Mishwan doesn't say that it has to be named in the count of conviction. It says it has to be tied or tethered to in some fashion. The law, I think Alaka says that you can't divorce the conduct from the loss. You can't divorce the conviction, which is a very precisely worded conviction for one thing she did, from the losses that are tied to that. If you look at the first page of the things that she did, it said she transferred over this five-year period, transferred funds into her own accounts, withdrew funds as cash. Those are not wire frauds, made payments to credit card companies. The transfer of funds into her account certainly would be a wire fraud. It could be if you could go to the bank and say, could you please put money from this account, which I'm in charge of, from my in-laws and put it in my account. One of them is write checks payable to herself. I mean, maybe technically the digital world comes into play, but it doesn't come under those precise words at 18 U.S.C. 1343. I think that when they were explaining this big five-year thing, they could have also put in, she went into her father-in-law's garage and sold his golf clubs, and they would have put it in there. Because the word, as you also see in there, is that they- But they didn't. Stick with us with what's alleged here. A scheme to defraud her elderly, and in one case, severely ill in-laws, and to rip them off. And she did it, and she hasn't denied doing it. That's one thing you've pointed out repeatedly in your brief, is she hasn't hidden from that. They're ugly, ugly facts. They're ugly facts. Yeah. So she stole nearly a million dollars from them, and clearly she was doing that in some significant and large measure, using the wires and wire transfers, et cetera. So those are the facts. We're not in the categorical approach world. We're in the circumstance-specific approach world. Those things are alleged. They make it into the restitution order. She's ordered as part of her criminal sentence to make restitution in that amount. How is that not a tie to or a tethering to the offense of conviction? Because the plea agreements, that's the second thing I think that this court should address, is honoring and respecting the plea agreements. That would shatter the plea agreement. I think there's a case called Singh. I know there's a lot of Singh cases in this court. But the one I'm referring to is 677 F3rd 503. What plea agreement? It talks about restitution orders under the subsequent, I mean, pursuant to a plea agreement, and the citation for these restitution orders 1836-63-83, you can include anything that the parties agreed to in terms of the plea agreement, and you separate it from the count of conviction. There doesn't appear to be – help me out with that, because as I read this, I didn't see that this was a restitution order tied to any plea agreement. This was a restitution order flowing from the conviction. Where is there – point me at a plea agreement where it says this is going to be the restitution amount. Well, the government, who has to prove the case in immigration court, the burden is on the government to prove the aggravated felony. They submitted certain things to prove the aggravated felony. They didn't submit the plea agreement. I assume this is because, like, in the Alaka case, which cites the Chang case from the Ninth Circuit, and the Knudsen case from the Seventh, that the plea – that certain counts were dismissed or certain counts were pleaded guilty to and others not. The threshold was kept under 10,000 on purpose, and the plea agreement was drawn to make the victim whole without punishing – Yeah, but there's nothing in this record for us to make that decision from. You're trying to say it's a failure of proof on the part of the government. The government's not relying on this. You are. I think it's a failure to prove – if $2,000 is two-tenths of one percent of the losses they're claiming, this is a very sophisticated government. It's the Department of Justice that was the prosecutor in Massachusetts District Court. It's the Department of Justice that are my immigration judges that make these decisions. They could have easily ramped it up at her on the front end, and to ramp it up on the back end four years after, they could have easily just made, if this was true, four counts totaling over $10,000 or one other transaction she did. It's obvious. I mean, maybe it's assumption, but I think there's a plea agreement in this case, and the government can tell you. We can't deal with what you assert to us is, quote, obvious, and what the plea agreement must have meant. We don't have a plea agreement in front of us. All we've got is an information. We've got a restitution order and a criminal judgment, and those things, they certainly look like they're talking about $950,000, and the fact that they picked – yeah, maybe the government next time will be a little sharper about this, and they'll say, oh, okay, well, I guess we can't just pick one that's under $10,000, but I'm still – maybe I'm just stuck in a bad place, but I'm still looking for you to help me understand what tethered to or tied to means in this one. You can't put in non-wire fraud conduct, and there's no allegation that this was wire fraud conduct, into an overall scheme to take things from your parents and call that a wire fraud. That didn't happen in the Doe case. That didn't happen in – it didn't happen in the Jawan. The recent case in Wang, things were direct – Wang changed some numbers on the future trading, and there was something that flowed directly from it. That was tied. Mr. Doe opened bank accounts for another Mr. Doe, so he could dump all his stuff in it, and he pleaded to one deposit in his bank, but it was an aiding and abetting offense, so he's charged like a principal for all the money that comes in. Singh has four or five different frauds – wire fraud, bank fraud, mail fraud, and money laundering, and his was a conspiracy, so he's charged with all the conspiracies. So your argument is we're left to guess what the amount of the wire fraud was. We know there's $950,000-plus of loss. We know that at least 2,000 and change was a wire fraud because that's the amount named in the account, the second number named in the account. But otherwise, we've got to guess that's the government's fault. Is that your argument? I'm not saying it's the government's fault. I'm saying the government purposely set this up to allow the victim to be made whole, to bring this woman who was living in a horrific life of torture in her own house, to get her back to her kids, to give her significant punishment. This is a middle-class suburban housewife raising two kids in a horrific household of abuse. She had her teeth knocked out. They said, we're going to punish you, but we're going to make sure you get back to those kids. We're also going to make sure that you pay back your victims, and if we send you to Taiwan, we're not going to get you. There's one other thing before I finish. I know my time's up, but I'd like to point the court to the very first page of the judgment in a criminal case, and that's page 578 of the administrative record. And it says, it's what we look at as immigration lawyers to decide what a conviction is, and then we apply the categorical approach. Would you like me to read it? Do you have it? If there's something you think is important. Yes. So, in light of the fact that this introductory language that the government wants to get in, I believe it says that the offense started in July 2008 and went to May 2013, so a five-year span of offense, and that's what you're talking about, should all be scooped in or shouldn't it be scooped in. If you look at page one, and this is the main conviction page that we use, it says the title in the section, what's violated, 18 U.S.C. 1343, nature of offense, wire fraud, date offense ended, 11-7-11. Right. I would submit that if there was another column that said date offense began, it's 11-7-11 and the whole thing took one minute. So, I don't know how the government, especially like this, could use anything after that date, because here the sentencing court is saying the offense ended that date. So, that's two or three years before all this other stuff that wants to go in. And I would also submit that what if the court, what if the single charge that the prosecutor in Massachusetts did this one online transfer, was the first day of those five years? Would you tag on the next five? Or what if it was the last day of those five years? Would you tag on the previous? It's just too much throwing in. You've reserved a lot of time for rebuttal. We'll have you back. Good morning. Greg Pennington for the Attorney General this morning. Three documents in the record and three cases from this court shows that clear and convincing evidence was submitted to support the $10,000 threshold. Judge Jordan, you've noted the information here, which specifically alleged a scheme to defraud, which is one element of the wire fraud statute, and then one instance of using a wire in furtherance of that scheme. Yeah, but why don't you answer, Mr. Pennington, what I take to be the central point of Mr. Griffin's argument, which is we don't know everything above that $2,000 change number. Between that and $950,000, we have no idea how much of that is wire fraud because there's nothing in the record for us to make a judgment on that about. It's guesswork, and that's on the government. They're supposed to prove this, and they didn't give you the information from which you can reach that understanding. So tough for the government. Right. And I don't see how the court could get around the recent decision in Doe, which was basically the same case, same wire fraud statute, alleged a scheme of $120,000 to $200,000 with only one wire transaction and an amount of $6,000. And the court said that that's just included as that jurisdictional hook, the element, and that the scheme is what we're looking at. Yeah, but is the scheme there different because you could understand that the losses were all associated with the bank and deposits, as Mr. Griffin was saying, which would have fit within the wire fraud statute, and here we're left to guess. We don't know. I understood that to be his distinction. Maybe that's not a well-founded distinction, but that's what I heard him say. Well, if you look at the information in the beginning eight paragraphs, when they allege the scheme, they list four different, the U.S. Attorney's Office listed four different ways that she used the wires. She transferred money from her in-laws' banks to her own. She transferred money to her own credit cards. She issued checks that resulted in wire transfers from the bank to the other. How do we know how much? We do know how much because the restitution order says $954,000, and if anything, it's well over the $10,000 threshold, and the government only needed to show, by clear and convincing evidence, that more than $10,000 was involved. Well, maybe the people were not connected here. I take their argument to be, to be tied to or tethered to, it's got to be this kind of offense conduct that's charged. It needs to be wire fraud kind of conduct. Is that an accurate or inaccurate statement of law? Because you heard him say, you know, if she'd stolen her father-in-law's golf clubs and sold them on Craigslist, you know, is that a loss that's tethered to or would be controlled to be tied to a wire fraud case? Well, tethered to, I think it would flow from the offense of conviction, and the offense here is the entire scheme. It's not just one discreet wire transaction. It was the overall scheme, and I understand the court's point that, like, how many wire transactions were involved, and do we get over the $10,000 threshold? My point, I'm trying to ask questions, and the questions that I'm trying to get you to answer here are, does it matter? They say the government didn't put evidence in the record from which you could conclude that all the rest of that fraud up to the $950 was wire fraud kind of activity. So the question I'm putting to you is, assume that they're right that we saw it that way. Does it matter whether it's wire fraud activity or not? Can it be tied to or tethered to the charged offense, even if it didn't involve the use of the wires? It could, and if you look at the ground of removability here, it says an offense involving fraud or deceit in which the loss to the victim exceeds $10,000. So all we're looking for is if this offense of conviction resulted in a loss greater than $10,000, and whether or not it involved specific wire transactions or not, we have a loss to the victim, as the restitution order shows. And the one piece of evidence in the record that hasn't been discussed yet is the pre-sentence investigation report, and this court in Kaplan looked at a pre-sentence investigation report and found three distinct aspects of it showed that a loss to the victim was more than $10,000. And if you look at the pre-sentence investigation report here, it talks about the victim loss, which has the same $954,000 figure, and then her base offense level for the sentencing guideline calculation was increased by 14 points because the loss to the victim exceeded $400,000. So we have the pre-sentence investigation report to further support the information, which clearly alleged that number of loss, the judgment of conviction, which entered the restitution order and adopted the pre-sentence investigation report in whole. And again, the court's decision in Allocca, which seems to be a sticking point, revolved around dismissed conduct, and we just don't have that here. We have one count. That was dismissed pursuant to a plea agreement. I mean, that's very common. I'll plead to one count and we'll dismiss the other counts. The information, I'll make an assumption, the information in this case was a result of a negotiation that, yes, I'll plead guilty to this information that charges one specific count because that's the easy way to proceed. No indictment, no grand jury proceeding. So the fact that there were dismissed counts in Allocca seems to me to be really not pertinent. The point is what's the offense of conviction and is the loss particularly tethered to the convicted count or to the conviction? And that's where I'm struggling. How is this $954,000 loss particularly tethered to this one charge of wire fraud? Because it was the overall loss amount of the victim. And the court in Allocca recognized an exception when there's an alleged scheme that involves more than a certain amount. And all the decisions where we look at losses not being tethered deal with dismissed counts. So it's part of this plea bargain that Ms. Koo relies on where I'm going to avoid immigration consequences by pleading guilty to an offense that's under $10,000. And that seems to be kind of a theme, but again, the only evidence... You say she's going to try to avoid it. You guys made the plea deal with her. Why shouldn't the... You say that as if the assumption should be she was being nefarious by pleading for this thing under $10,000. The government struck a deal with her. Isn't the inference at least as strong, maybe stronger, that the government agreed to let her plead to a single count that was well under $10,000 precisely for the reasons Mr. Griffin pointed out? Because it would not have these immigration consequences. No, and if I could point you to in the record here, she submitted her sentencing memorandum in addition to the pre-sentence investigation report. And the sentencing memorandum... It's on page 740. And this is where she's arguing for a below-guideline sentence, below the 33-to-40-month sentence that was calculated based on her 14-point increase because the loss to the victim was more than $400,000. And this is the second full paragraph. Most significantly, and this is her defense counsel, Ms. Koo is now subject to automatic deportation as a result of her conviction in this case. So she recognized when she pled guilty that this conviction was going to result in her deportation. So to come now and say that this plea agreement was part of her bargain package, and I understand these equities of keeping her in the United States to pay off this restitution. And those go to the ultimate discretionary determination by the agency in this case. But there was no ultimate bargain to plead less than $10,000 to avoid immigration consequences. So we get back to the... What's your answer to Mr. Griffin's assertion that the information charge is a single offense on November 7, 2011? The judgment of conviction says the offense ended on November 7, 2011. And therefore, since the offense conduct ended, it says offense ended 11-7-11, we're really looking at one day's worth of activity, not five years' worth of activity. Well, if you look at the pre-sentence investigation report, it talks about the beginning of this offense, this scheme, was in 2008. So well before, there was many years before this one wire transaction. And again, as in Doe... If this is true, how do we know how much money she stole in those years before? Maybe she was stealing five bucks here, five bucks there, and then she went big after 11-7-11. I mean, how are we supposed to know that? We have to look at the record evidence in this case to determine whether there's clear and convincing evidence, that it's more than $10,000. Exactly. We have to ask whether there's clear and convincing evidence. What's your clear and convincing evidence? Does 11-7-11 represent a cutoff date or is conduct that occurs after 11-7-11 tied to or tethered to the offense? I think that the district court's judgment talks about the offense dates moving past that one date. I think that was just the date included in the information about the single wire transaction. It's on page 578 of the appendix. Just as Mr. Griffin said, in the amended judgment in a criminal case, it says offense ended 11-7-11. That's what it says. So are we allowed to, as a matter of law, does that cutoff conduct that can be attended to? Are losses that occurred, if any, after that date losses that are tied to or tethered to the offense? I would say that the total loss is what we're looking for as to what's tethered to the offense. And the total loss is clearly reflected in the judgment of conviction in the restitution order. The total loss here, whether it happened on one day or overall, the total loss to the victim in this case was $954,000. That has never been disputed. It was recognized by Ms. Kuhl in her briefs. She's never challenged that the total loss to the victim here is $954,000. In her offense of conviction, that loss is clearly tethered to it because she was ordered to pay back that amount, and it was clearly reflected in the district court's judgment. And I think that that is clear and convincing evidence, as in Kaplan, as in Doe, as in Wang, where you're looking at more than just the information here. You're looking at the record as a whole, all the circumstances of this conviction, and the restitution order and the judgment are, I think, the most important pieces to look at as to what the total loss to the victim was. And because there was clear and convincing evidence to support her removability, she needed some relief from removal. It gets pretty easy from here. The court has held that wire fraud, in particular, involves a specific intent to defraud, and that's always been held to be a crime involving moral turpitude. So Ms. Kuh needed a waiver of inadmissibility to readjust her status based on a new visa petition, and ultimately the agency denied that waiver as a matter of discretion. And she says that the board failed to consider certain factual findings of the immigration judge, but the board's order specifically referenced the immigration judge's factual findings, including all the positives, and it just found that the negatives seriously outweighed the positives in this case, that she wasn't entitled to a discretionary waiver. Without that, we would ask the court to deny the petition unless there are other questions. Mr. Kennedy, should I guard anything from you? No, I have no other questions. Thank you. All right. Thank you. Thank you, Mr. Pettit. Mr. Griffin, if you'd be so kind. Your Honor, as I've repeated and we've repeated throughout the case, she's never denied that she owes, because she took from her in-laws, almost a million dollars. But it's not wire fraud. That's not how she took it, and the conviction is for wire fraud. And we just can't get so attenuated, or we'll be pulling the rug out from under people that are saving the government a lot of money by not going to trial. On page 746 of the administrative record, for example, there was the press release, and it says, Holden woman convicted in scheme to steal close to a million dollars. She took it. She stole it. She didn't use wire fraud to do it, and that's not what they advertised. Yeah, you're emphasizing this repeatedly, and that's why I've asked you, and I've asked Mr. Pennington about it. Do you have legal authority for the proposition? Because implicit in what you're saying is that to be tied to or tethered to this offense, and therefore appropriately considered as loss for determining aggravated felony, it has to have been wire fraud conduct. It cannot have been anything other than wire fraud conduct. What's the legal authority for that? Because immigration removal charges are based on convictions. They're not based on conduct. Well, what was the offense of conviction in Nijawa? It was wire fraud, mail fraud, bank fraud, and money laundering, and it was a conspiracy. And that's also, he's responsible by pleading guilty to, I mean, he was found guilty by jury of conspiracy. All the actions of other people, too. And the conviction of offense in Wong was making a false report in connection with the commodities transaction? Yes, and his losses were tethered because he moved some numbers around. And, of course, that's what in front of this court he was saying. All he did was move numbers around. There's no losses. But when the losses, by moving those numbers around, he caused losses that directly flowed there from. When Ms. Ku was at an ATM machine and made a little switch because she was hurting that day, it didn't flow forward. It didn't flow backwards. That's what she needed. There was no overall arching scheme of how to commit wire fraud. And this was one of the wire frauds at the ATM machine. There was, this was a woman that's gambling here and there. She's under pressure. She goes to escape. And now, and she's short of money and she needs to go do something. So maybe she sells some golf clubs or maybe she writes herself a check. But there's no overall scheme to commit wire fraud here on a sophisticated level like Mr. Doe and his co-conspirator. And that's distinguished here, too. So what, to put a point on it, for you to win, our ruling has to be that no losses suffered by the victims and perpetrated by your client count toward loss when you're thinking about whether there's an aggravated felony, unless they are wire fraud. They could, you know, nothing else, even if we were for the sake of argument to say this was her grand scheme. She thought it up and she plotted it out and she said, and this wire fraud is going to be one part of my overall way that I'm attacking my in-laws and I'm going to steal them blind. None of that matters. What matters is it's wire fraud, because if it's not wire fraud, it can't count toward loss. That's the legal position you're taking, right? Yes, but I'll even expand. It's wire fraud and the things that were tethered to that particular wire fraud. So if you take Wang as the counterpoint, Wang made a couple of false entries. What was tethered to that? Did he create any losses by doing that? Yes, a couple million. What did Ms. Ku, losses did she cause by going to the ATM machine and transferring $2,000 from her in-laws account to her own account? There was zero except for that $2,000. There's nothing tethered to it. She had this overall horrific five-year period in her life where she did a lot of things and she stole a lot of money. Even the indictment at the bottom of it says, in total, Ku stole more than $950,000. We agree. She didn't wire fraud $950,000. Just to submit to the court, this is another immigration offense. It's an aggravated felony. It's called theft. They could have charged her with theft and they didn't. This was specifically designed for one wire fraud. What should we make of the concession in the criminal court that she recognized by pleading guilty she was immediately deportable? I don't know. I don't remember that document. And I can't say that the attorney she had was confident in how he wrote what he wrote and how he presented the case at all. All I know is that this was subsequent to a plea agreement. Thank you, Mr. Griffin. We appreciate counsel's argument. We take the matter under advisement. Recess.